MARY CARP, as Administratrix, etc., of DAVID CARP, Deceased, Appellant, v. ALLEN J. WILSON, Doing Business under the Firm Name and Style of A. TOWLE & Co., Respondent.

First Department, January 20, 1939.

*Nathaniel Phillips* of counsel [*B. Hoffman Miller* with him on the brief; *Nathaniel Phillips*, attorney], for the appellant.

*John G. Reilly* of counsel [*Thomas F. Harrigan* and *Thomas A. Clarke* with him on the brief; *John J. Kirwan*, attorney], for the respondent.

DORE, J.   The verdict of the jury in defendant's favor is, in our opinion, adequately supported by the weight of the credible evidence.   A reading of this record indicates that the defendant's evidence, through its witnesses Dougan and De Lorenzo, was of far higher quality and more convincing than that of plaintiff's three witnesses.   There is nothing to show that the jury's verdict evinced partiality, prejudice or passion.   There is no such claim.

The physiological difficulties with regard to the cause of the death of the deceased are inherent in plaintiff's theory of how the

accident happened, as well as in defendant's, and the burden was on the plaintiff to show how the accident happened and to prove the negligence as charged. Plaintiff's witnesses testified that the truck was standing still west of the crosswalk when the deceased left the curb; that the light changed when the deceased reached a point in front of the truck; that the truck began to move, the deceased turned toward the truck, threw up his hands, was struck by the front of the truck, fell backward, and the truck passed over him its whole length and then continued on its way a distance at least equal to the length of the truck, one witness testifying that it went out to the center of St. Nicholas avenue. It was plaintiff's contention and theory that the axle or the tie-rod joining the front wheels came into contact with deceased's chest, crushing it and thus causing death. There were, nevertheless, no external marks upon the body. By its verdict it is clear that the jury did not believe this story, testified to by three witnesses who claimed to have been present and to have seen the accident, although no one of them had given his name to the policeman who appeared almost immediately after the accident. The operator of the truck, Dougan, and his helper, De Lorenzo, testified that the deceased was not in front of the truck. The court clearly pointed out to the jury that the issue was whether the deceased was struck by the truck or walked into the side of it, that the burden was on the plaintiff to establish defendant's negligence, and properly left the issues of fact on conflicting testimony to the jury. The jury resolved such issues in defendant's favor. The court throughout the trial and in the charge to the jury was eminently fair to both sides, and we find no prejudicial reversible error.

The judgment should be affirmed, with costs.

MARTIN, P. J., and TOWNLEY, J., concur; O'MALLEY and COHN, JJ., dissent and vote to reverse and grant a new trial.

COHN, J. (dissenting). The action was brought by plaintiff as administratrix to recover damages for the death of her husband, David Carp, alleged to have been caused by the negligent operation of a Mack truck owned and operated by defendant. While crossing from the north to the south side of One Hundred and Twenty-sixth street near the west crosswalk of St. Nicholas avenue, New York city, David Carp met his death by contact with defendant's truck. He was a married man of family, fifty years of age and employed as foreman of a tailoring shop at One Hundred and Twenty-fifth street and Madison avenue.

The decedent had emerged from the exit of a subway station and was returning to his place of employment when he met his

untimely death. The truck was proceeding in an easterly direction on One Hundred and Twenty-sixth street, a one-way thoroughfare, and it was at a standstill west of the intersection of that street with St. Nicholas avenue, in obedience to a red traffic light. When the light changed to green the truck proceeded into St. Nicholas avenue. It was then that the accident occurred. Both the operator of the truck, one John H. Dougan, and his helper, De Lorenzo, testified that no one was in front of the truck, but after it had gone eight or ten feet a thump was felt in the vicinity of the left rear wheel. The truck was stopped and the deceased was observed to the left of the rear of the truck. Defendant's theory appears to be that the deceased in some manner negligently walked into the rear of the truck and that as a result the left rear wheel passed over him.

Upon the trial, appellant showed that deceased left the north curb of One Hundred and Twenty-sixth street and proceeded in a southerly direction and that when he reached a point in front of the truck the light changed; that the truck immediately started without giving deceased an opportunity to complete his crossing in safety. While trying to ward off the oncoming truck, deceased was struck and thrown on his back and the vehicle passed over him as he lay outstretched between the front wheels.

Three men, Harry Cooper, Charles Allen and George Holt, who were eyewitnesses to the accident, testified in support of appellant's claim as to how the mishap had occurred. The driver of the truck, his helper and a taxi driver named Gadson Goodson supported defendant's version. The truck was twenty-eight feet six inches in length and weighed seven and one-half tons unloaded. It carried goods weighing about two and one-half tons. The medical examiner, who performed an autopsy upon the deceased, testified that the cause of death was a fracture of the ribs, tears of the heart and pericardium, shock and hemorrhage. He also found a fracture of the sternum but there were no marks externally. Police officers who arrived after the occurrence of the accident saw a pool of blood on One Hundred and Twenty-sixth street located ten feet south of the north curb of One Hundred and Twenty-sixth street and six feet eight inches west of the northwest building line of St. Nicholas avenue. One of these officers, William Lind by name, stated that when he arrived at the scene a crowd of about fifty people had collected. He procured the names of three persons, one of them being Goodson, who appeared as a witness for defendant, and two other witnesses, one Thomas Gray of 306 West One Hundred and Twenty-seventh street and an Alphonse Whitman of 322 St. Nicholas avenue.

Gray and Whitman did not appear at the trial. The defendant established that they had testified at a hearing in the Magistrates' Court about one month after the occurrence of the accident and he proved that he had made every reasonable effort to procure the attendance of these two men but that they could not be found. The testimony concerning the two absent witnesses seems to have played an important part in the case.

Counsel for the defendant throughout the trial made many efforts to bring to the jury's attention the fact that these two witnesses had given testimony in the Magistrates' Court which supported the defendant's theory of how this accident had occurred, namely, that the deceased had walked into the left rear of the truck. A few excerpts from the record will give some notion as to the atmosphere created by the questions of counsel.

While counsel was interrogating plaintiff's witness, Charles Allen, concerning his knowledge of the whereabouts of Whitman, one of the missing witnesses, the following occurred: " Q. Did you ever talk to him [Whitman] after this occurrence? A. I talked to him, sure; we were always talking about the accident around there. Q. You talked about the accident? A. Yes, sir. Q. And when he talked to you about the accident, didn't he say that the man came in contact with left rear wheel of this car? A. No. Mr. Phillips: I object to that, may it please the Court. The Court: I am allowing it. He said, ' No.' I am letting it stand."

In cross-examining plaintiff's witness, George Holt, defendant elicited the following testimony: " Q. And you heard a lot of people tell him [Officer Lind] it was the rear wheel that ran over this man, did you not? Mr. Phillips: I object to the form of that question. A. No, he did not. The Court: ' No,' he said. I am going to leave the answer stand ' No.' Q. Did you hear him say how the accident occurred? Did you hear him ask how the accident occurred? A. No, I did not." And again, at a later point, to the same witness the following question was put: " Q. Now, whether it was Whitman or Gray or any one else, didn't you hear all the people tell the police officer that it was the left rear wheel of this truck that struck the man? Mr. Phillips: I object to that again, and again I think it is highly unfair and improper. The Court: Objection sustained."

When the detective, Alfred J. Fernan (who had arrived at the scene about an hour and fifteen minutes after the happening of the accident) was on the stand, the following occurred: " By defendant's counsel: Q. Now, officer, without any qualifying statement, did you also indicate in that report at two different places what wheel

came in contact with the deceased? Mr. Phillips: I object to that may it please the Court: The Court: Objection sustained. Strike it out. The jury will disregard that testimony because there is nothing before us up to the present moment that this man came in contact with a wheel. What this officer had been told is incompetent evidence. * * * Despite the fact that I ruled, and ruled again and again, that what this officer was told was not competent evidence, up to this moment, I allowed you to continue. Now you have brought out to the attention of this jury that this officer had put down there that he walked into the side of a wheel, and the officer wasn't present there. He could have only obtained that information from some one who told it to him, which is entirely incompetent and wrong. And you are to disregard that, ladies and gentlemen of the jury."

When Dougan, the driver of the truck, was examined in direct examination by defendant's counsel, the following question was asked: " Q. * * *. Now, may I ask, did that man Gray tell at that hearing what — now wait until his Honor rules on it — did that man Gray tell at that hearing what he had told you at the scene of the accident? Mr. Phillips: I object to that, may it please the Court. The Court: Sustained."

It thus becomes obvious that defendant's counsel desired to get before the jury the fact that persons, including Gray and Whitman, had on the night of the accident informed the police officers at the scene that deceased had walked into the rear of the truck and that at the hearing in the Magistrates' Court both Gray and Whitman had given such testimony. True it is that upon objection of counsel the court with praiseworthy fairness properly and promptly sustained objections to the line of inquiry which was being pursued, but the questions were all before the jury. Though defendant, particularly in view of the court's repeated rulings, well knew that what these missing witnesses had said to the officers or what they had testified to in the Magistrates' Court was wholly improper, he persisted in asking these incompetent questions almost to the very end of the trial. There could be no mistake about defendant's studied effort to implant in the minds of the jurors in this objectionable manner the notion that Whitman and Gray had told officers that they had seen the deceased walk into the rear of the truck and that they so testified at the hearing in the Magistrates' Court. The Court of Appeals has held that, where the trial court or the Appellate Division is satisfied that the verdict of the jury has been influenced by asking incompetent questions which counsel must be assumed to know

cannot be answered, it should, for that reason, set the verdict of the jury aside. (*Cosselmon* v. *Dunfee*, 172 N. Y. 507.) In our opinion, the situation presented here requires that the verdict of the jury be set aside upon that ground. (*Connolly* v. *Brooklyn Heights R. R. Co.*, 179 N. Y. 7; *Havern* v. *Hoffmann*, 252 App. Div. 486). In *Kraus* v. *Fifth Avenue Coach Co.* (233 App. Div. 357) this court, in reversing a judgment under strikingly similar circumstances, in an opinion by O'MALLEY, J., said (p. 360): " We are of opinion that it has been sufficiently made to appear because of the persistent efforts of plaintiff's counsel to inject into the case incompetent evidence, that the defendant was not accorded a fair trial of the issues to which it was entitled."

Moreover, after the formal charge had been delivered, defendant's counsel made the following request to charge concerning the witnesses Whitman and Gray:

" The Stenographer [reading]: ' Defendant's counsel: Now, in connection with the witnesses whose absence has been explained by the defendant, I respectfully request the court to charge the jury that they may draw such inferences and such conclusions as to their testimony in that court as the facts before them or admitted by the court warrant.

" ' The Court: I refuse to so charge except to say to the jury that they are permitted to draw reasonable inferences and only reasonable inferences.'

" Mr. Phillips: I except to that part of your Honor's charge which follows: ' I refuse to so charge.' I think they have no right to draw any inferences.

" The Court: Take your exception."

In the circumstances of this case we think that it was error. prejudicial to plaintiff for the court to charge that in connection with the witnesses Gray and Whitman, whose absence has been explained by defendant, the jury might draw " reasonable " inferences as to their testimony in that court (in the Magistrates' Court) as the facts before them or admitted by the court warrant.

This direction to the jury by the court gave the jurors the right to draw inferences and conclusions as to what had been the testimony of these two absent witnesses in the Magistrates' Court, the very evidence which had been repeatedly excluded. To allow the jury to draw inferences from evidence " admitted by the court " as to the testimony of witnesses in another court when there was no evidence at this trial of any such testimony, was an invitation to the jury to assume that what counsel had insinuated in his improper questions was the basis for " reasonable "

inferences. At best such conclusions could only be speculation and surmise and of no probative value. In view of what had occurred during the taking of testimony, the court's charge was erroneous and prejudicial, and in the circumstances here warrants the granting of a new trial.

In *Connolly* v. *Brooklyn Heights R. R. Co.* (*supra,* at p. 9) the Court of Appeals said: " We appreciate that in the excitement of a trial the zeal of the counsel may lead him to contend for propositions of law that cannot be sustained and for the admission of evidence that should not be received. But there is a limit to the exercise of charity in this respect and evidence may be so plainly and so palpably objectionable as to require a counsel, if he will insist in obtaining a ruling on it, at least to offer the evidence in such a way as not to prejudice the jury. The counsel, however, did not rest with the adverse ruling of the court, but again succeeded in getting the objectionable evidence before the jury by means of the question and answer which have been narrated. As the ruling on that question presents an error of law of which this court has cognizance we should not allow the judgment to stand."

Furthermore, upon the entire record, we believe that the verdict of the jury was contrary to the inherent probabilities and also was against the weight of the credible evidence, and, upon those grounds also, should be set aside. Three witnesses for the plaintiff, who appeared to be disinterested, testified that they had seen the deceased leaving the subway station and attempt to cross One Hundred and Twenty-sixth street in front of the truck while it was at a standstill and that, before the deceased had an opportunity to negotiate the crossing and when he had reached the front of the truck, the vehicle started and felled him. The testimony of the medical examiner as to the deceased's injuries and that of the police officers as to the location of the pool of blood are wholly consistent with plaintiff's version of the occurrence of the accident.

As against the affirmative evidence of the manner in which the accident occurred, defendant had only one witness, Gadson Goodson, who gave direct testimony that he had seen deceased " zigzag " his way to the rear of the truck. This witness was shown to be wholly untruthful and untrustworthy and one who had no regard for the sanctity of an oath. The driver of the truck and his helper, both interested witnesses, merely testified that they did not see the deceased in front of the truck but that they felt a jolt or bump in the rear wheel.

There is no proof in the case that Carp, the deceased, was under the influence of liquor, except perhaps Goodson's testimony that

he had seen him " zigzag." While defendant makes no claim that deceased was intoxicated, there could be little basis for such a conclusion. If any alcohol was found in the organs of the deceased, no attempt was made by any one to offer such evidence. The full testimony of the medical examiner was not made available at the trial due to a commendable desire on the part of the trial judge to keep from the jury an account of the gruesome details of the autopsy. However, such testimony may become quite important, and, if a new trial is had, he should be permitted to relate it in full.

For the foregoing reasons the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'MALLEY, J., concurs.

Judgment affirmed, with costs.